IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEPHEN YANG, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | No. 3:19-cv-1146-G-BN |
| § | |
| THE DAILY WIRE, LLC, § | |
| § | |
| Defendant. § | |

**ORDER GRANTING IN PART AND DENYING IN PART
<u>DEFENDANT'S MOTION TO COMPEL</u>**

Defendant The Daily Wire, LLC has filed a motion to compel discovery from Plaintiff Stephen Yang, *see* Dkt. No. 22 (the "MTC"), seeking an order overruling any of Yang's remaining objections and compelling Yang to provide the following categories of information: "1. A full explanation of how Mr. Yang typically licenses his photographs and at what rates (Interrogatory No. 12); 2. Plaintiff's license agreements for similar photographs (RFP No. 12); 3. A statement of what Mr. Yang has earned from the Dan Rochkind photograph (Interrogatory Nos. 9, 13, and 14); and 4. Settlement agreements related to the Photograph of Dan Rochkind from Plaintiff's 13 other lawsuits (RFP Nos. 1 and 11)," *id.* at 2, 13 (footnote omitted).

Defendant explains that

> Plaintiff Stephen Yang sued Defendant The Daily Wire, LLC on May 13, 2019 for allegedly infringing one of Mr. Yang's copyrighted photograph of Dan Rochkind (the "Photograph"). Plaintiff is seeking $30,000 in statutory damages from Defendant for a single use of a single photograph on one website article, even though the photograph was removed from the article before Mr. Yang filed suit. However, Plaintiff refuses to produce

> discovery that would allow a finder of fact to put that request into context, such as (1) Mr. Yang's typical model for licensing a single use of a photograph, (2) the revenue earned from the Photograph at issue, and (3) Mr. Yang's settlement agreements with the other 13 companies he has sued for infringing the same Photograph at issue in this case. Plaintiff's refusal to produce relevant information in this case is not only improper as it is hindering Defendant from evaluating the claims and defenses, but is also inhibiting the parties' ongoing settlement discussions.
> 
> Defendant seeks an order compelling Plaintiff to produce four categories of information that are relevant to the claims and defenses in this case. Such information is necessary, particularly before the Parties engage in further settlement discussions or a possible Court-ordered mediation.
> 
> ....
> 
> Defendant asks the Court to compel Plaintiff to produce the requested information since each category is relevant and Plaintiff has failed to set forth any legitimate objection to resisting discovery.

*Id.* at 1-2.

Yang responds that he

> has fully complied with his discovery obligations in this proceeding and has spent substantial time and expense meeting and conversing with defense counsel in good faith concerning alleged discovery deficiencies, all of which have been fully cured.
> 
> Yang avers that the only issue to be resolved by the Court is whether Yang must disclose his settlement agreements with third parties relating to the Photograph at issue (or other photographs). Yang avers that all other issues raised by Defendant are either moot or are related to Defendant's aim to seek more "detailed" interrogatory responses, which the Rules do not require.

*Id.* at 14. Yang asserts that "Defendant's motion to compel further discovery should be denied in its entirety and Plaintiff should be awarded his attorneys' fees pursuant to [Federal Rule of Civil Procedure] 37(a)(5)(B)." *Id.*

The Court has carefully considered the parties' briefing and GRANTS in part and DENIES in part the MTC to the extent and for the reasons explained below.

-2-

The Court has laid out that standards that govern a Federal Rule of Civil Procedure 37(a) motion to compel such as VBF's as to Federal Rule of Civil Procedure 34 requests for production and Federal Rule of Civil Procedure 33 interrogatories, and the Court incorporates and will apply – but will not repeat – those standards here. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 573-86 (N.D. Tex. 2018).

I. A full explanation of how Mr. Yang typically licenses his photographs and at what rates (Interrogatory No. 12)

Defendant's Interrogatory No. 12 asks Yang to "[d]escribe Your commission/licensing model for Your photographs, including the identity of those that typically hire You for photographs, Your standard rates for photographs, Your fees for taking photographs, Your fees for having a photograph published."

In his supplemental response, Yang answers:

> Yang does not maintain a model. Besides from the New York Post, he generally negotiates a fee for the Photograph on a case-by-case basis. Media outlets typically license photographs from Yang. He does not have standard rates; it is negotiated on a case-by-case basis.

Dkt. No. 22-6 at 4.

Defendant contends that

> Yang's answer is evasive and insufficient. For example, Mr. Yang fails to describe how he typically commissions or licenses his photographs because he claims not "maintain a model." Regardless of what Mr. Yang calls it, he has information about how he runs his business and should describe it in response to the interrogatory. Similarly, Mr. Yang does not describe his standard rates or fees for licensing his photographs because he claims the rates are "negotiated on a case-by-case basis." Even if the rates may vary from job to job, Mr. Yang is in the best position to summarize the range of rates he typically charges. Likewise, Mr. Yang states that "Media outlets typically license photographs from Yang," but

> does not disclose the identities any such organizations as the interrogatory calls for.
>
> ....
>
> The requested information is relevant to determining whether Mr. Yang's request for $30,000 in statutory damages is reasonable under the circumstances. The Court should compel Mr. Yang to provide a complete response, including his typical licensing rates for photographs.
>
> On October 29, Mr. Yang produced 169 pages of agreements and invoices, and now claims that these documents are sufficient to answer the interrogatory. However, such documents only show examples of Mr. Yang's business model. It appears that he has relatively standard hourly rates for his services, and a range of flat fees and/or rates for different services, such as licenses for usage of photographs. Defendant should not have to try and recreate an explanation of Mr. Yang's business model from his invoices, when the Plaintiff is in the best position to provide a summary of his business model, fees, and rates for his services. Since Mr. Yang never attempted to invoke Rule 33(d) to answer this interrogatory, such an invocation of Rule 33(d) is improper at this stage.

Dkt. No. 22 at 7-8.

Yang responds that he

> has already explained in response that he licenses photographs through an arms-length transaction where fees are negotiated based on a case-by-case basis, depending on the contemplated use. Plaintiff has produced over a hundred pages of documents showing his invoices from such transactions. If Defendant wants to delve into each and every transaction, it is free to do so at Mr. Yang's deposition or at trial. But Yang should not be compelled to provide more detailed interrogatory responses than he has already provided.
>
> Moreover, Yang does not have a "model" for how he negotiates prices. He negotiates on a case-by-case basis. He cannot provide an answer to "typical licensing rates" because his rates vary from case-to-case, as demonstrated by his fulsome document production. Defendant might not like the answer Yang has provided, but that doesn't mean the answer is incomplete.
>
> ....
>
> Finally, if the Defendant seeks to retain an expert witness to construct a so-called "model," based on the 169 pages of invoices provided by Yang, then it is incumbent on Defendant to do so. The notion that Defendant wants Yang to analyze every invoice and every transaction in the form of interrogatories, so as to develop a newly constructed "model"

for the purposes of litigation, is neither appropriate nor condoned by Rule 33.

*Id.* at 18-19, 22.

The Court is persuaded that Yang has sufficiently answered this interrogatory. He has explained that he does not have a commission/licensing model for his photographs beyond what he has described and that he does not maintain "standard rates." The Court agrees that Yang cannot properly, under the circumstances, point to produced documents under Federal Rule of Civil Procedure 33(d) in place of a narrative answer, *see generally Lopez*, 327 F.R.D. at 579, but he has not done so here. Yang's answer as a whole discloses a conscientious endeavor to understand the question and to answer it fully, and so his "obligation under Rule 33 is satisfied." *Id.* (internal quotation marks omitted).

The Court DENIES the MTC as to Interrogatory No. 12.

II.    Plaintiff's license agreements for similar photographs (RFP No. 12)

Defendant's Request for Production ("RFP") No. 12 asks Yang to produce "[d]ocuments describing license rates for any of Your photographs to news organizations since April 1, 2014."

Yang objected and responded as follows:

Plaintiff objects to Request No. 9 on grounds that it is overly broad and unduly burdensome with respect to photographs that are not the subject of the present action. Plaintiff further objects on grounds that Request No. 9 seeks information that is disproportionate to the needs of the case, immaterial to any claim or defense in this action and not calculated to lead to the discovery of admissible evidence at trial with respect to photographs that are not at issue. Subject to the foregoing

> General and Specific Objections, Plaintiff does not have any documents in his possession responsive to Request No. 9.

Dkt. No. 22-3 at 6.

> Defendant contends that
>
> Yang claims his actual damages in this case includes a "$500 lost licensing fee" that he estimated from "benchmark licenses." He simultaneously claims he "does not have standard rates" for his photographs and that fees are "negotiated on a case-by-case basis."
>     In his response, Mr. Yang improperly repeats his boilerplate objections to Document Request No. 9. After making a litany of unsupported objections, Mr. Yang stated that he "does not have any documents in his possession." Yet, on October 7, Mr. Yang produced on invoice/agreements. And Mr. Freeman stated on the October 25 meet-and-confer that Mr. Yang was going to look again for such licenses or invoices. On October 29, Mr. Yang produced an additional 169 pages of agreements and invoices.

Dkt. No. 22 at 8-9. But

> it's not clear to Defendant if all such agreements and invoices from 2015 to the present have been produced, and thus Defendant still requests an order compelling and order compelling their production. Since there is no dispute that these agreements are discoverable, Plaintiff should have no objection.

*Id.* at 2 n.2. According to Defendant,

> [i]nformation about Mr. Yang's other rates/license fees (especially those directed to print-based journalism on the internet) is relevant to testing his claim in this case. In addition, Mr. Yang's alleged actual damages bear on the proportionality of his claim of $30,000 in statutory damages. A court may consider whether statutory damages should include a component of restitution. *See Broad. Music, Inc. v. Tex. Border Mgmt., Inc.* 11 F. Supp. 3d 689, 697 (N.D. Tex. 2014). It appears that Plaintiff is choosing to delay discovery until pressed, and then only produce the minimum. While Mr. Yang has produced agreements; it seems likely that more exist. And since Mr. Yang is no longer asserting any objections, an order requiring Mr. Yang to produce these documents appears appropriate. Accordingly, Mr. Yang should be compelled to produce his license agreements with these entities, as well as his other licenses

> agreements, particularly those for a single use of a single photograph on a website.

Dkt. No. 22 at 8-9.

Yang responds that he

> has already indicated in writing that he has produced all responsive documents in his possession dating back at least three years prior to the infringement. At this point, Defendant is just embarking on a fishing expedition.

*Id.* at 22.

Because Yang has apparently now abandoned his objections and produced responsive documents, the Court is persuaded that Yang must, by **November 22, 2019**, serve an amended response that explains that he has produced all responsive documents located after a reasonably inquiry and diligent search and whether any responsive information or documents have been withheld as to RFP No. 12. And so the Court GRANTS the MTC as to Interrogatory No. 12.

III.   A statement of what Mr. Yang has earned from the Dan Rochkind photograph (Interrogatory Nos. 9, 13, and 14)

Defendant's Interrogatory No. 9 asks Yang to "[d]escribe all written and oral agreements involving the Photograph. To be complete, Your answer should include at least: a. The identification, by bates or other identifier, of each written agreement involving the Photograph, including all licenses, commission agreements, orders for copies, contract(s) to take the photo, assignment(s), or any other written agreement that involves the Photograph, b. a description of all oral agreements involving the

Photograph, including the names of the parties involved, the date of the agreement, and a description of all of the terms of the agreement."

In his supplemental response, Yang answers:

No agreement specifically refers to Photograph; however, Plaintiff has a written freelance agreement with New York Post. There were no oral agreements per se.

Dkt. No. 22-6 at 4.

Defendant's Interrogatory No. 13 asks Yang to "[d]escribe all income [he has] received for the Photograph, including the identity of the source of all income, the date, and the amount."

In his supplemental response, Yang answers: "$300 Day Rate from New York Post. April 11, 2019." Dkt. No. 22-6 at 5.

Interrogatory No. 14 asks Yang to "[d]escribe all income You've received for all of Your photographs of Mr. Rochkind, including the photograph of Mr. Rochkind and Ms. Spindel from https://nypost.com/2017/04/12/why-hot-people-arent-worth-dating/."

In his supplemental response, Yang answers: "$300 Day Rate from New York Post. April 11, 2019." *Id.*

Defendant contends that,

[t]hough Mr. Yang identified a single $300 payment from the New York Post on April 11, 2019, his answers are incomplete. For example, Mr. Yang has settled at least thirteen other lawsuits involving the photograph of Dan Rochkind. Mr. Yang's answers should include at the least the identities of these thirteen parties and the corresponding amount of money Mr. Yang received from settling those lawsuits.
  Mr. Yang has no stated objections to answering either interrogatory, and the amount of money Mr. Yang has earned from licensing the Photograph at issue is relevant to his claim for $30,000 in

> statutory damages. Mr. Yang's objections, as discussed during the October 23 and 25 meet-and-confers, was tied to the final category of documents, namely settlement agreements from his other lawsuits over the same Photograph. Beyond that, Mr. Freeman did not offer any substantive explanation as to why the information could not be produced. However, regardless of whether the settlement agreements are ultimately required to be produced, Mr. Yang can, and should, state the total amount of money he's received based on the Photograph.

Dkt. No. 22 at 9.

Yang responds that he

> has already responded that he only licensed the Rochkind Photograph to one media outlet: the New York Post. So there is no more information that can be provided. To the extent Defendant seeks information derived from Yang's settlement agreements with third parties, Mr. Yang has already objected to providing such information on grounds of relevance.
> ....
> In sum, Defendant has failed to meet its burden of demonstrating that Yang has failed to provide complete answers to Defendant's interrogatories. Also, Defendant should not be permitted to use Rule 33 interrogatories as a device to try the entire case; it will have the opportunity to depose Yang for seven hours, so there is no need to compel Mr. Yang to provide further detailed responses than he already has to date. Accordingly, this request should be denied in its entirety.

*Id.* at 19.

The Court is persuaded that Yang has sufficiently answered Interrogatory No. 9, and Defendant offers no explanation to the contrary. The Court DENIES the MTC as to Interrogatory No. 9.

As for Interrogatory Nos. 13 and 14, the Court agrees with Defendant that a full answer requires Yang to provide the total amount of money Mr. Yang received from lawsuits involving the photograph of Dan Rochkind. For the reasons described below, the Court determines that this is relevant to Yang's claims and proportional to the

needs of the case and not otherwise outside the scope of proper discovery. Yang must, by **November 22, 2019**, serve a supplemental answer to Defendant's Interrogatory Nos. 13 and 14 that includes this information.

IV. Settlement agreements related to the Photograph of Dan Rochkind from Plaintiff's 13 other lawsuits (RFP Nos. 1 and 11)

Defendant's RFP No. 1 asks Yang to produce "[a]ll settlement agreements You entered into since January 1, 2016, related to the alleged use of Your photographs."

RFP No. 11 asks Yang to produce "[d]ocuments describing license rates for the Photograph."

Yang objected and responded as follows:

> **Response to Document Request No. 1:** Plaintiff objects to Request No. 1 on grounds that it is overly broad and unduly burdensome. Plaintiff further objects on grounds that Request No. 1 seeks information that is disproportionate to the needs of the case, immaterial to any claim or defense in this action and not calculated to lead to the discovery of admissible evidence at trial. Accordingly, no further response is required.
> ....
> **Response to Document Request No. 11:** Plaintiff does not have any documents in his possession responsive to Request No. 11.

Dkt. No. 22-3 at 5, 6.

Defendant contends that

> Plaintiff provided only boilerplate objections to Request No. 1, and no objections to Request No. 11.
>    The majority of the discussion on the October 23 and 25 meet-and-confers were spent discussing Mr. Yang's settlement agreements resulting from the approximately 13 other lawsuits he's filed over the Photograph at issue in this case. Defendant asserts that these (presumably 13) agreements are relevant in assessing the reasonableness of Mr. Yang's request for $30,000 in statutory damages for the same claim he's made in these other cases.

During the October 25 meet-and-confer, Mr. Freeman represented that there is no case directly on point as to whether lawsuit settlement agreements for copyright infringement involving the same plaintiff and same photograph are relevant and discoverable. Mr. Freeman represented that he has produced such agreements in other cases on behalf of a copyright plaintiff to assist in assessing damages. But, Mr. Freeman stated, since that Court did not permit Mr. Freeman to introduce those agreements into evidence in that case, that such agreements are not relevant in this case. Counsel for Plaintiff did not provide any court opinions elaborating. Defendant's position is that evidence that is relevant under FRE 401 is discoverable, even if there is a possibility that such evidence may not be admissible at trial. It may be that these agreements are eventually inadmissible in a trial in this case under Rule 403. However, neither the Parties nor the Court can make that assessment unless they are produced. And under FRE 401, they are relevant given that relevance is determined by whether these agreements have "any tendency to make a fact more or less probable than it would be without the evidence." In this case, they bear directly on Mr. Yang's request for $30,000 in statutory damages. Notably, such evidence would be discoverable via a third-party deposition or subpoena. However, Defendant should not have to burden third-parties for discovery that Mr. Yang has in his possession.

Mr. Freeman raised other objections that were waived given that such objections were not included in Mr. Yang's initial objections. For example, Mr. Freeman objected that it would be overly burdensome for him to spend 3-4 hours emailing the parties to the agreements to give them notice and seek permission under the relevant confidentiality provisions of each agreement. Mr. Freeman did state that they could be produced pursuant to the Court's order. And Mr. Freeman did not seem to have any concerns with this Court's protective order protecting the confidentiality of the agreements, for example, if such were produced on an attorneys' eyes only basis.

Mr. Freeman also objected to their production given that the amount negotiated as part of a lawsuit settlement may be attributable to many factors that have no bearing on the fair market value of a license for use of a photograph. While true, that does not render the entirety of the agreement irrelevant. The weight of those other factors can be explained by Mr. Yang or the licensee. Further, there are other factors that are relevant and discoverable, such as the scope of the license.

On October 29, as part of preparing this Joint Statement, Plaintiff, for the first time, cited several cases outside of the Fifth Circuit as allegedly supporting its position. But none of those cases held that settlement agreements obtained through litigation involving the same

> copyright infringement claim for the same work were not discoverable. First, Plaintiff cites *Smith v. NBC Universal*, 524 F. Supp. 2d 315 (S.D.N.Y. 2007) where the plaintiff attempted to rely on the amount of his recent copyright infringement settlement agreements to prove his own economic damages under a different contract. The Smith court stated that Plaintiff "Smith misunderstands the purpose of damages in contract law. Under California law, the remedy for breach of contract compensates the non-breaching party only for the harm caused by the breach itself. Because deterrence is not a goal of contract law, the amount paid to settle Smith's last set of claims is irrelevant." *Id.* at 331. Notably, the issue was admissibility, not discoverability. Next, Plaintiff cites *Attachmate Corp. v. Health Net, Inc.*, No. C09-1161 MJP, 2010 WL 11561518 (W.D. Wash. June 18, 2010). In Attachmate, the dispute involved a claim for copyright infringement stemming from the defendant's alleged unlicensed use of the plaintiff's software. Defendant requested that plaintiff produce "settlement agreements with respect to any third-party's alleged partial compliance or non-compliance with any EULA or Software Licensing Agreement." *Id.* at 1. The *Attachmate* court "reject[ed] Health Net's assertion that past settlements between Attachmate and third-parties are relevant to determining the fair market value of licenses for the Reflections software." *Id.* The court noted that "[w]hatever prices were negotiated by Attachmate and third-parties do not reflect the fair market value for licenses of Attachmate's products." *Id.* Importantly, the defendant in that case was not seeking agreements relating to the same infringement claim for the same copyrighted work that was at issue in that case, unlike this dispute.
>
> Plaintiff has failed to preserve or articulate any objection to production of Plaintiff's settlement agreements with other parties over this same Photograph at issue in this case. Since such agreements would put Mr. Yang's request for $30,000 in statutory damages into context, and Plaintiff waived the objections that it asserts now, such agreements should be produced.

Dkt. No. 22 at 10-12.

Yang responds that Defendant seeks

> the production of Yang's settlement agreements with third parties, purportedly to establish the value of the Photograph at trial. This request should be denied because Yang's settlement agreements with third parties are not relevant to any claim or defense in this copyright infringement action.

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...." Fed. R. Civ. P. 26(b)(1). "(T)he determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action." Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note, 2000 amendments. Under Rule 26(b)(1) the court must focus on the claims and defenses involved in the action. *Id.* "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Crosby v. Lousiana Health Service and Indem Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (quoting *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 820 (5th Cir. 2004)).

Here, Defendant's request for the production of settlement agreements is not "reasonably calculated to lead to the discovery of admissible evidence," *Crosby*, 647 F.3d at 262, because there is no information contained within any of those settlement agreements which is relevant to any claim or defense on this proceeding. Without citing any applicable legal authority whatsoever (particularly in the copyright context), Defendant merely speculates that it might be able to admit Yang's settlement agreements to establish statutory damages below the $30,000 requested in this case.

But the amount negotiated as part of a settlement agreement can be attributable to many factors that have no bearing on the calculation of damages in a trial proceeding, such as the financial capacity of the defendant, the fee-arrangement between defense counsel and defendant, the existence of an insurance carrier, the level of culpability of that specific defendant, the cost-benefit analysis of an early settlement vs. prolonged litigation, the defendant's desire to establish judicial precedent (or not), the competency and negotiating skill of defense counsel, the desire (or lack of) of the defendant to participate in depositions or other court appearances and other matters relating to the business aspects of litigation.

Although Defendant has failed to cite any authority to support its position, contrary authority does exist to support Plaintiff's position. In copyright infringement actions, federal courts have held that settlement agreements cannot be used as admissible evidence to establish the fair market value of the copyrighted work. *See, e.g, Smith v. NBC Universal*, 524 F. Supp. 2d 315, 331 (S.D.N.Y. 2007) (in copyright infringement action, holding that settlement amount not relevant to the calculation of fair market value and noting "[w]ere damages to be calculated based on the fair market value of the Video at the time of the breach, it is unlikely that the $40,000 figure would be correct. That sum was paid as per the Settlement Agreement in return for Smith's release of various legal

-13-

> claims. See Settlement Agreement ¶ 2. It thus represents the value to the parties to the Settlement Agreement of ending costly litigation and potential liability for past wrongs. It does not represent the value of the footage."); *Attachmate Corp. v. Health Net, Inc.*, No. C09-1161 MJP, 2010 WL 11561518, at *1 (W.D. Wash. June 18, 2010) (in copyright infringement action where defendant sought production of settlement agreements to establish market value, court denied request, noting "[t]he Court rejects Health Net's assertion that past settlements between Attachmate and third-parties are relevant to determining the fair market value of licenses for the Reflections software.... Whatever prices were negotiated by Attachmate and third-parties do not reflect the fair market value for licenses of Attachmate's products. Those rates do not show what the parties would have willingly negotiated prior to litigation in an open and fair market. The settlements reflect the particular and distorting effect of litigation...").
>
> Here, Defendant has failed to cite any legal authority to support its position that settlement agreements are relevant. Defendant has also failed to articulate how settlement agreements, even if admissible, would have any bearing on any claim or defense in this proceeding. Accordingly, Defendant's request should be deemed frivolous. *See New Pac. Overseas Grp. (USA) Inc. v. Excal Int'l Dev. Corp.*, No. 99 CIV. 2436 DLC, 2000 WL 377513, at *7 (S.D.N.Y. Apr. 12, 2000) (finding argument "plainly frivolous" where there was "no legal authority in support of these novel arguments").
>
> Finally, the Court should also take into consideration that the introduction of settlement agreements are likely to confuse the jury, *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, Case No. 6:08-cv-273, 2010 WL 1727916 (E.D. Tex. Apr. 28, 2010) (Love, M. J.) (granting-in-part a motion in limine precluding settlement agreements because their potential for prejudice and jury confusion substantially outweighed any probative value), and are contrary to public policy. *See Gaull v. Wyeth Laboratories*, 687 F. Supp. 77, 83 (S.D.N.Y. 1988) ("Considering the small evidentiary value of the terms of the settlement agreement, and the chilling effect an order of disclosure of agreements entered into with the understanding of confidentiality would have on future settlement negotiations in other litigation, the Court declines as a matter of policy to order its disclosure. Both plaintiff and defendant are hereby precluded from relying on the existence of the Abbott licensing agreement as evidence in this lawsuit.")
>
> Based on the foregoing, Defendant's request for settlement agreements should be denied in its entirety.

*Id.* at 14-17.

Defendant has provided no reason to dispute Yang's assertion that he has no license agreements responsive to RFP No. 11, and so the Court DENIES the MTC as to that request.

As to RFP No. 1, Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit" and that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). The Court therefore finds Yang's arguments against production based on admissibility to be misplaced.

Defendant seeks Yang's settlement agreements from other cases involving the same photographs to put Yang's request for $30,000 in statutory damages into context. 17 U.S.C. § 504(c)(1) provides that "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just." Yang has elected that he "is seeking statutory damages and attorney's fees." Dkt. No. 15 at 1.

The Court is persuaded that the amounts Yang has received to resolve other copyright claims as to the same photograph are relevant to his claim here and that – because, as he notes, many considerations may influence the amount of a settlement – the settlement agreements themselves are relevant to considering those amounts in this context.

Yang can address any concerns as to confidentiality by using the Agreed Protective Order [Dkt. No. 15] in place in this case.

And producing these documents is proportional to the needs of the case, considering the amount in controversy and the parties' relative access to this information and where the burden or expense of the this proposed discovery does not outweigh its likely benefit.

The Court overrules Yang's objections to RFP No. 1 (including the unsupported overbreadth and undue burden objections), GRANTS in part the MTC as to RFP No. 1, and orders Yang to, by **November 22, 2019**, serve an amended response – without objections – to, and produce all previously unproduced, responsive documents in response to, RFP No.1 – but limited to those settlement agreements for cases involving with the same photograph at issue in this case – in compliance with Rule 34(b)'s requirements.

Finally, under Federal Rule of Civil Procedure 37(a)(5), the Court determines that, under all of the circumstances presented here, the parties will bear their own expenses, including attorneys' fees, in connection with the MTC.

SO ORDERED.

DATED: November 7, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE